## The Bank of North America for the use of SWIFT *against* M'CALL.

1811.

*Philadelphia,*
*Saturday,*
January 5.

EXCEPTIONS to a report of referees.

If a creditor of *A* lays an attachment upon goods which appear as the property of *A,* but wherein *B* has nevertheless an interest which he communicates to the creditor before the attachment is laid, the creditor is bound to refund *B* his proportion of the money recovered under the attachment, notwithstanding the judgment of a competent court decreed the whole to him as the property of *A.*

*Qu.* Whether it is the same with an equitable assignee of *A* who gives no notice of his claim until after the attachment.

George Plumstead deceased, and *Swift* the plaintiff in interest, made a shipment on joint account to *St. Domingo* in *October* 1804, the bill of lading and the invoice of which were made out in the name of *Plumstead* only. *Plumstead* died in *April* 1805, and being indebted to the defendant in 2600 dollars upon two promissory notes, the defendant gave instructions to have his property attached in *St. Domingo.* It was accordingly attached in *June* following; and the coffee, &c. which proceeded from *Plumstead's* shipment, was delivered over by virtue of the attachment to the defendant's agent, who forwarded it to him at *Philadelphia.* The proceedings of the court at *St. Domingo* were very regular, there being a petition for leave to attach, permission to attach, and a return of attachment, petition to summon the garnishees, citation to the garnishees, a return of service, and a decree reciting the proved account and power of attorney of *M'Call,* the declaration of the garnishees that they had coffee in their hands belonging to *Plumstead* to the amount of 5000 dollars, and then confirming the attachment, and ordering the garnishees to pay 2600 dollars to the plaintiff, without prejudice to interest and costs. The present action was for *money had and received,* to recover the interest of *Swift* in the shipment, both as partner of *Plumstead,* and also in *Plumstead's* right, by assignment from the Bank of North America, who held the original bill of lading with a blank indorsement from *Plumstead,* as a security, and had transferred it to *Swift* upon being paid their claim. Both the account and power of attorney, referred to in the decree of the court, spoke of *Plumstead* as being deceased.

The referees reported in favour of *Swift* 4924 dollars and 60 cents, being the whole amount principal and interest which the defendant had received from his attachment.

The exceptions were two, 1. That the referees erred in

fact, in taking for granted that *Swift* was jointly interested with *Plumstead* in the shipment to *St. Domingo;* whereas he either was not so at all, or only in a small degree. 2. That they erred in law in not considering the attachment and proceedings in *St. Domingo*, relative to the property, as conclusive against *Plumstead*, *Swift*, and the Bank.

Upon their examination relative to the facts, the referees stated that they did not take *Swift's* interest for granted. They were satisfied from the evidence that *Swift* and *Plumstead* were jointly concerned, and that the adventure was indebted to *Swift* as joint partner. They also stated that before the defendant ordered the attachment, he had notice of *Swift's* interest, although it did not appear that he had any knowledge of that of the Bank.

*B. Tilghman* for defendant. The *first* exception is not made out; but I contend that the attachment is conclusive as to one half the property belonging to *Plumstead*, which he assigned to the Bank in whose place Mr. *Swift* stands. The case of *Rappelje* v. *Emory* (a) is in point. The defendant fairly recovered this money by the judgment of a court of competent jurisdiction as the property of *Plumstead;* and this judgment cannot be reversed in a collateral way. 4 *Cranch* 511, 512., *app.* The Bank had opportunities of giving notice to the defendant, and neglected to do it. If they had an interest, they must be content to see it postponed to those who had as good claims against *Plumstead*, and were more vigilant in prosecuting them. As to *Swift's* part, in his own right, I leave that to the court; it may be upon a different footing from the other in consequence of the notice.

*Condy* for the plaintiff. There can be no doubt as to *Swift's* proportion, because after notice of his interest, it was manifestly against good conscience in the defendant to attach the property as *Plumstead's;* and in fact, the a 'venture owes *Swift* more than the award. The same principle goes further. He knew that *Plumstead* was dead, and that his property had vested in his administrators for the benefit of his creditors generally. Under such circumstances the attachment passed no right to the defendant. He held the property as

(a) 2 *Dall.* 51.

BANK
of
N. AMERICA
v.
M'CALL.

it was held before, subject to the claims of *Plumstead's* assignee the Bank, who have a superior equity. In fact the proceedings were altogether void, being against a dead man. The court should not have proceeded against him. No court professing to act upon principles of reason, would have countenanced the suit. A court of the revolted negroes is not intitled to the application of that principle which upholds the judgments of foreign judicatures. *Rappelje* v. *Emory* was quite different; there was a strong equity in *Emory*, but there is none in the defendant. The attachment was there against the general effects of the debtor, it was here against specific effects. If a debt of *B* is attached as the debt of *A* and recovered, the plaintiff in the attachment may be safe; but if goods belonging to *B* are attached as the goods of *A* and recovered, the plaintiff must answer to the real owner.

*Tilghman* in reply. The only question is whether the judgment of the court at *St. Domingo* against a dead man, known to be dead, is valid. The court knew that *Plumstead* was dead, for by their decree they refer to papers which recited it; and therefore it is to be presumed that by the law of *St. Domingo* that circumstance did not alter the case. It is always to be presumed, until the contrary is shewn, that the proceedings of a foreign court are conformable to the law of the place; *Rappelje* v. *Emory*; (*a*) and that law must govern. *Burrows* v. *Jemino* (*b*), *Embree* v. *Hanna* (*c*). As to the competency of the tribunal, the blacks have the government *de facto*; and this court can recognise no tribunal that does not proceed from that source. The Bank and its assignee have no equity whatever, since they neglected to pursue their rights. *Swift* gave notice. We agree that the award should be confirmed as to his half.

TILGHMAN C. J. delivered the court's opinion.

The *first* exception in this case, is founded in matter of fact. The arbitrators have been examined, and it appears that this exception has not been supported.

In the second exception two points of law are involved. *John W. Swift* had claims in two distinct rights: one as surviving partner of *George Plumstead*; the other by virtue of

(*a*) 2 *Dall.* 231.          (*b*) 2 *Stra.* 733.          (*c*) 5 *Johns.* 102.

an assignment from the Bank of North America, who had received an assignment from *Plumstead* in his life. Before the defendant laid the attachment in *St. Domingo*, he had received notice of *Swift's* claim, as surviving partner; but he had received no notice of the claim of the Bank. It is evident that the claim in his own right stands on much stronger ground than that derived from the bank. Accordingly the defendant's counsel, although they have urged serious objections against the assignment from the bank, have yet admitted that the defendant, having laid the attachment after notice of *Swift's* right as surviving partner, is responsible to *Swift* for the money recovered on the attachment, to the amount of the balance due to him from the partnership. Now this precludes the necessity of going into the claim derived from the Bank, because it appears from the proof made before the arbitrators, that the balance due to *Swift* from the partnership exceeds the sum awarded to him. We are therefore of opinion that the defendant has failed in all his exceptions.

Award confirmed.

A doubt having been afterwards expressed by the defendant's counsel, whether the amount of *Swift's* claim against the partnership was equal to the sum awarded, the court recommitted the report to the same referees to ascertain the amount of *Swift's* lien on the partnership stock, and directed judgment to be entered for it in vacation upon the return of the award.